IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| JAMES EDWARD PHILLIPS,<br><br>        Plaintiff,<br><br>v.<br><br>AVCO CORPORATION, AGCO CORPORATION, NEW IDEA CORPORATION, ALLIED PRODUCTS CORPORATION, and TEXTRON, INC.,<br><br>        Defendants. | CIVIL ACTION NO.: 3:23-cv-4575-SAL<br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

Plaintiff James Edward Phillips ("Plaintiff"), by and through the undersigned attorneys, complaining of the Defendants above-named, would allege and show unto this Honorable Court the following:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is an individual who resides in Lee County, South Carolina.

2. Defendant AVCO Corporation ("Defendant AVCO") is a foreign corporation registered in the state of Delaware. Upon information and belief, Defendant AVCO maintains a principal executive office at 40 Westminster St, Providence, Rhode Island, 02903. Upon information and belief, Defendant AVCO can be served service of process via its registered agent at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801. At all times relevant herein, Defendant AVCO was engaged in the business of manufacturing, designing, assembling, selling and distributing corn machinery, including the New Idea Model 324 Corn Picker Serial Number 263352 and the New Idea Model 327 Husking Unit Seral Number 275510, with the reasonable expectation that said machinery would be used in South Carolina, where it was

1

so used. Defendant AVCO conducted substantial business in South Carolina, and this action arises out of a tort committed in South Carolina; therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802 and South Carolina Code § 36-2-803, as well as the Due Process Clause of the United States and South Carolina constitutions.

3. Upon information and belief, Defendant AVCO is a wholly owned subsidiary of Defendant Textron.

4. Upon information and belief, Defendant AVCO acquired Defendant New Idea in or around October 1945.

5. Defendant New Idea Corporation ("Defendant New Idea") is or was a Delaware corporation with its last known principal place of business located at 123 West Sycamore Street, Coldwater, Ohio 45828, with an office located at 5500 Paxton Street, Harrisburg, Pennsylvania 171111. At all times relevant herein, Defendant New Idea was engaged in the business of manufacturing, designing, assembling, selling and distributing corn machinery and/or are successors and/or are likewise liable in connection with the New Idea Model 324 Corn Picker Serial Number 263352 and the New Idea Model 327 Husking Unit Seral Number 275510, with the reasonable expectation that said machinery would be used in South Carolina, where it was so used. At all times relevant herein, Defendant New Idea conducted substantial business in South Carolina, and this action arises out of a tort committed in South Carolina; therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802 and South Carolina Code § 36-2-803, as well as the Due Process Clause of the United States and South Carolina constitutions.

6. Upon information and belief, Defendant New Idea is or was a division of and owned by Defendant AVCO Corporation. Upon information and belief, Defendant AVCO sold Defendant New Idea to Defendant Allied Products in or around 1984.

7. Defendant Allied Products Corporation ("Defendant Allied Products") is or was a foreign corporation registered in the state of Delaware. Upon information and belief, Defendant Allied Products can be served service of process via its President Richard Drexler at 10 S. Riverside Plaza, Chicago, Ill. 60606. At all times relevant herein, Defendant Allied Products was engaged in the business of manufacturing, designing, assembling, selling and distributing corn machinery, including the New Idea Model 324 Corn Picker Serial Number 263352 and the New Idea Model 327 Husking Unit Seral Number 275510, with the reasonable expectation that said machinery would be used in South Carolina, where it was so used.  At all times relevant herein, Defendant Allied Products conducted substantial business in South Carolina, and this action arises out of a tort committed in South Carolina; therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802 and South Carolina Code § 36-2-803, as well as the Due Process Clause of the United States and South Carolina constitutions.

8. Upon information and belief, Defendant Applied Products sold Defendant New Idea to Defendant AGCO in or around 1993.

9. Defendant AGCO Corporation (Defendant AGCO") is a foreign corporation registered in the state of Delaware. Upon information and belief, Defendant AGCO maintains its principal place of business at 4205 River Green Parkway, Duluth, Georgia. Upon information and belief, Defendant AGCO can be served service of process via its registered agent at Richard Carothers, Esq., 1809 Buford Highway, Buford, Georgia, 30518. At all times relevant herein, Defendant AGCO was engaged in the business of manufacturing, designing, assembling, selling and distributing corn machinery, including the New Idea Model 324 Corn Picker Serial Number 263352 and the New Idea Model 327 Husking Unit Seral Number 275510, with the reasonable expectation that said machinery would be used in South Carolina, where it was so used. At all times relevant

herein, Defendant AGCO conducted substantial business in South Carolina, and this action arises out of a tort committed in South Carolina; therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802 and South Carolina Code § 36-2-803, as well as the Due Process Clause of the United States and South Carolina constitutions.

10. Defendant Textron, Inc. is a foreign corporation registered in the state of Delaware with its principal place of business in Rhode Island. Defendant Textron has a Certificate of Authority to Transact Business in South Carolina. Upon information and belief, Defendant Textron can be served service of process via its registered agent CT Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina, 29223. At all times relevant herein, Defendant Textron was engaged in the business of manufacturing, designing, assembling, selling and distributing corn machinery, including the New Idea Model 324 Corn Picker Serial Number 263352 and the New Idea Model 327 Husking Unit Seral Number 275510, with the reasonable expectation that said machinery would be used in South Carolina, where it was so used. At all times relevant herein, Defendant Textron conducted substantial business in South Carolina, and this action arises out of a tort committed in South Carolina; therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802 and South Carolina Code § 36-2-803, as well as the Due Process Clause of the United States and South Carolina constitutions.

11. Upon information and belief, Defendant Textron accepted the potential liabilities of Defendants AVCO, AGCO, Paul Revere, and/or Allied Products, including liabilities for, or arising out of, the design, manufacture, assembly, distribution, and sale of the subject corn picker.

12. At all times relevant herein, Defendants manufactured, created, designed, assembled, inspected, installed, tested, labeled, distributed, supplied, marketed, and/or sold the New Idea Model

4

324 Corn Picker Serial Number 263352 and the New Idea Model 327 Husking Unit Seral Number 275510.

13. Defendants manufactured, created, designed, assembled, inspected, installed, tested, labeled, distributed, supplied, marketed, and/or sold the subject corn picker the ordinary course of business.

14. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over the parties to this action and subject matter jurisdiction over the claims asserted, as there is complete diversity of citizenship amongst the parties and the amount in controversy exceeds seventy-five thousand ($75,000.00) dollars, exclusive of interest and costs.

15. In accordance with 28 U.S.C. § 1391 and Local Civil Rule 3.01(A)(1), venue is proper in the Columbia Division as a substantial portion of the alleged acts or omissions of Defendants occurred within the Columbia Division and Defendants regularly conduct business within the Columbia Division.

**FACTS**

16. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

17. On or about November 1, 2020, Plaintiff was operating a New Idea corn picker that was designed, manufactured and/or distributed by Defendants. The corn picker consists of two units: (1) the Model 327 Husking Unit and (2) the Model 324 Gathering Unit ("collectively, "the subject corn picker").

18. Suddenly and without warning, the Husking Unit caught Plaintiff's right index finger and pulled his right index finger into the unguarded husking rollers.

19. Plaintiff could not remove his finger from the husking rollers despite repeated attempts to do so.

20. As Plaintiff attempted to remove his right index finger, the force of the husking rollers drew Plaintiff's hand further into the Husking Unit. Plaintiff attempted to pry his right hand away from the husking rollers using his left hand. However, the husking rollers pulled his left hand into the husking bed, resulting in severe and enhanced injuries to both his right and left hands, including the violent and traumatic amputation of four fingers from Plaintiff's left hand and a portion of his left thumb as well as Plaintiff's right index finger.

21. The Husking Unit was not equipped with a shield or protective device to prevent Plaintiff's hand from being drawn further into the husking rollers.

22. The Husking Unit was not equipped with any mechanism by which someone who became entangled in the husking rollers could turn off power to the husking rollers, stop the husking rollers, remove his hand from the husking rollers and/or prevent the husking rollers from pulling an entangled person further into the husking rollers.

23. The Husking Unit was not equipped with an emergency shut off device that could be utilized when someone became entangled in the husking rollers.

24. The Husking Unit was not equipped with warnings sufficient to alert users of the risk posed by the husking rollers, including but not limited to the risk of enhanced injuries like those described above.

25. The Husking Unit was in substantially the same condition at the time of Plaintiff's injuries as it was when it left the possession and control of Defendants.

26. As a result of the actions of the Defendants set forth herein, Plaintiff suffered severe bodily injuries including but not limited to the loss of four fingers on his left hand, a portion of his

left thumb, and his right index finger. These injuries have caused and will continue to cause Plaintiff future pain and suffering, scaring and disfigurement, mental anguish and emotional distress, medical expenses, impairment of health and bodily efficiency, and loss of enjoyment of life.

27. Defendants owed Plaintiff a duty to act with reasonable care and to follow the law imposed upon them by statute and common law. Defendants negligently and recklessly breached such duties as set forth herein.

28. The failure of Defendants to design the subject Husking Unit in a safe condition to prevent users from becoming entangled in the husking rollers, the failure of Defendants to design the Husking Unit in a safe condition with a shut off device that could be utilized when and after someone became entangled in the husking rollers, and the failure of Defendants to provide adequate warnings or instructions on how to prevent becoming entangled and/or further entangled in the husking rollers were direct and proximate causes of Plaintiff's injuries and damages as discussed herein.

29. The wrongful acts of the Defendants showed willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which would raise the presumption of conscious indifference to consequences and the rights of others. Punitive damages should be imposed in an amount sufficient to keep such wrongful conduct from being repeated.

## FOR A FIRST CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY: DESIGN DEFECT

30. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

31. At all relevant times, Defendants were "sellers" of the subject corn picker as that term is used and defined in S.C. Code § 15-73-10, et seq.

32. The subject Husking Unit was designed, manufactured, assembled, tested, distributed, and placed into the stream of commerce by Defendants in a defective condition unreasonably dangerous to persons using it for its foreseeable and intended purposes.

33. Defendants had a duty to warn users about the hazards inherent in the subject Husking Unit.

34. The subject Husking Unit posed potential risks that were known and/or should have been known by Defendants at the time of design, manufacture, distribution or sale.

35. The subject Husking Unit was defective in that it failed to include a guarding mechanism to prevent users from becoming entangled in the husking rollers and/or becoming further entangled and suffering enhanced injuries once caught in the husking rollers.

36. The subject Husking Unit was defective in that it failed to include an emergency stop device to allow a user who became entangled in the husking rollers to shut off the machine.

37. The subject Husking Unit was defective in that it failed to include sufficient warnings to advise users of the risks posed by the husking rollers.

38. The subject Husking Unit was in substantially the same condition at the time of Plaintiff's injuries as it was when it left the possession and control of Defendants.

39. Plaintiff utilized the subject Husking Unit for the purposes and in the manner for which it was intended and/or reasonably anticipated by Defendants.

40. The design of the subject Husking Unit is defective because the dangers associated with the use of the subject Husking Unit outweigh its utility.

41. Plaintiff could not, by the exercise of ordinary care, have anticipated or discovered the defects and deficiencies mentioned herein and/or perceived the danger inherent in the subject Husking Unit.

42. At the time Plaintiff's became entangled and suffered severe and traumatic injuries, the subject Husking Unit was in a defective condition unreasonably dangerous to users due to:

   a. The lack of a guard or protective mechanism to prevent users from becoming captured by the husking rollers;

   b. The lack of a guard or protective mechanism to prevent users from becoming pulled further into and further entangled in the husking rollers;

   c. The lack of a shut off/ emergency stop device that could be utilized when a user became entangled in the husking rollers;

   d. Such other and further particulars as the evidence may show.

43. Plaintiff's ability to avoid injury and/or to extricate himself as to avoid further and enhanced injuries was frustrated by the absence of such alternative designs incorporated into the subject Husking Unit.

44. A feasible alternative design existed at the time that the subject Husking Unit was manufactured, created, designed, assembled, installed, distributed, supplied, sold, and maintained.

45. Defendants were aware of the need for an alternative design due because Defendants received numerous reports of injuries and deaths caused by users becoming entangled and drawn further into in Husking Units with the same or a similar design.

46. Plaintiff has been injured and damaged as set a direct and proximate result of the defective design of the subject Husking Unit and is entitled to recover a judgment of actual, statutory, and punitive damages against Defendants.

**FOR A SECOND CAUSE OF ACTION**
**STRICT LIABILITY: FAILURE TO WARN**

47. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

48. At all relevant times, Defendants were "sellers" of the subject Husking Unit as that term is used and defined in S.C. Code § 15-73-10, et seq.

49. The subject Husking Unit was designed, manufactured, assembled, tested, distributed, and placed into the stream of commerce by Defendants in a defective condition unreasonably dangerous to persons using it for its foreseeable and intended purposes.

50. Defendants had a duty to warn users about the hazards inherent in the subject Husking Unit.

51. The subject Husking Unit posed potential risks that were known and/or should have been known by Defendants at the time of design, manufacture, distribution or sale.

52. Plaintiff was unaware of the dangerous nature of the subject Husking Unit.

53. The subject Husking Unit presented a substantial danger during intended and reasonably foreseeable use and such dangers were not readily recognizable to the ordinary user.

54. Plaintiff was unaware of the dangerous nature of the subject Husking Unit, including but not limited to the risk of enhanced injury resulting from the lack of any mechanism by which a user could stop the husking rollers once entangled in the husking rollers.

55. Defendants failed to adequately warn or instruct users, including Plaintiff, of these potential risks of substantial danger.

56. The lack of such warnings rendered the subject Husking Unit defective.

57. As a direct and proximate result of the Defendants' failure to adequately warn of the substantial danger posed by the subject Husking Unit, it was defective, and Plaintiff suffered traumatic injuries resulting in the amputation of five fingers and a portion of his thumb.

58. Plaintiff is entitled to recover damages for all general, special, and pecuniary damages proximately caused by Defendants and the defective condition of the subject Husking Unit when placed into the stream of commerce.

59. Plaintiff demands judgment against Defendants for all actual and compensatory damages and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## FOR A THIRD CAUSE OF ACTION
## NEGLIGENCE

60. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

61. Defendants manufactured, created, designed, assembled, inspected, installed, tested, labeled, distributed, supplied, marketed, and sold the subject Husking Unit.

62. Defendants had a duty to exercise reasonable care to adopt a safe design of the subject Husking Unit so that it could be safely used as intended by users, including Plaintiff.

63. Defendants had a duty to warn of the dangers of which they knew or reasonably should have known arising from the use of the subject Husking Unit and an affirmative duty to protect the ultimate users from the hazards inherent in its defective design.

64. Defendants knew the subject Husking Unit was dangerous due to:

   a. The lack of a guard or protective mechanism to prevent users from becoming captured by the husking rollers;

   b. The lack of a guard or protective mechanism to prevent users from becoming pulled into and further entangled in the husking rollers;

   c. The lack of a shut off/ emergency stop device that could be utilized when a user became entangled in the husking rollers;

11

    d. Such other and further particulars as the evidence may show.

65. Plaintiff was unaware of the dangerous nature of the subject Husking Unit.

66. Defendants knew or should have known that ultimate users such as Plaintiff would not realize these inherent dangers.

67. Defendants owed Plaintiff a duty of reasonable care and were negligent, grossly negligent, willful, wanton, reckless and careless, and breached their respective duties of care by:

    a. Failing to exercise reasonable care in the design of the subject Husking Unit;

    b. Failing to incorporate safeguards into the design of the subject Husking Unit to prevent it from presenting an unreasonable risk of substantial danger to users;

    c. Failing to take measures to ensure the subject Husking Unit was merchantable and safe for its intended use prior to placing this product in the stream of commerce;

    d. Failing to modify the design of the subject Husking Unit or offer appropriate warnings despite knowledge of numerous prior safety issues related to users becoming entangled in the husking rollers;

    e. Failing to adopt, implement, and/or convey adequate warnings of the dangers arising from the intended, reasonable and foreseeable use of the subject Husking Unit;

    f. On such other and further particulars as the evidence may show.

68. Defendants' negligence was a substantial factor is causing Plaintiff's injuries.

69. As a direct and proximate result of the Defendants' negligence and the breaches complained of herein, Plaintiff suffered the violent and traumatic amputation of five fingers and a portion of his thumb.

70. Defendants' negligence, carelessness, recklessness, willfulness and wantonness consisted, among other things, of the following:

    a. In selling the aforesaid corn machinery when the Defendants knew, or should have known, that such machine was unreasonably dangerous, and unsafe for use;

    b. In failing to take precautions, for safe operation of machine prior to sale;

    c. In failing to warn or appraise the users of the dangers of machine;

    d. In failing to exercise that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances.

71. Defendants' negligence, gross negligence and/or recklessness was the direct and proximate cause of the violent amputation of five of Plaintiff's fingers and a portion of Plaintiff's thumb. Plaintiff's resulting injuries and damages include but are not limited to:

    a. The violent amputation of five whole fingers and a portion of a thumb;

    b. Extensive pain, mental anguish and discomfort;

    c. Permanent partial disability;

    d. Expenses for medical care and treatment;

    e. Future medical expenses;

    f. Inability to carry on normal activities;

    g. Loss of income, wages and/or earning potential;

    h. Emotional distress;

    i. Loss of enjoyment of life.

72. Plaintiff is entitled to a judgment against Defendants for both actual and punitive damages due to the negligence, carelessness, gross negligence and/or recklessness of Defendants as alleged herein.

## FOR A FOURTH CAUSE OF ACTION
## BREACH OF WARRANTIES

73.     Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

74.     Defendants are merchants as defined by the South Carolina Commercial Code.

75.     In selling the subject Husking Unit, Defendants made express and implied warranties of merchantability and i fitness for a particular purpose regarding the subject corn picker, which were part of the basis of the bargain and/or which arose by operation of law.

76.     Defendants' warranties of merchantability and fitness for a particular purpose flow to Plaintiff pursuant to South Carolina Code § 36-2-318.

77.     Defendants expressly and/or impliedly agreed to design, market, sell, distribute and/or place the subject Husking Unit into the stream of commerce in a good and workmanlike manner, in accordance with all relevant local, state, and federal laws, rules, regulations and codes as well as in accordance with all industry standards and trade practices.

78.     The subject Husking Unit was expected to and did reach Plaintiff in essentially the same condition as when it left Defendants' hands. At the time of Plaintiff's injury, the subject Husking Unit was in the same or essentially the same condition as it was in at the time that it left Defendants' possession and control.

79.     Defendants could reasonably expect that users and operators of the subject Husking Unit, such as Plaintiff, would utilize the machine in the manner in which Plaintiff was utilizing the machine at the time of the accident at issue in this litigation.

80.     Plaintiff utilized the Husking Unit picker in a foreseeable manner yet sustained severe injuries.

81.     Defendants designed, distributed and placed into the stream of commerce the subject Husking Unit which was not of merchantable quality in that it was not fit for the ordinary purpose for which it was intended due to its unreasonably dangerous condition and because it was not adequately

equipped with sufficient safeguards and/or warnings to prevent user from becoming entrapped in the machine's husking rollers.

82. The subject Husking Unit was not fit for the ordinary purpose for which it was intended because it failed to operate safely and entrapped Plaintiff in the husking rollers while Plaintiff was operating the machine in a foreseeable and ordinary manner.

83. Plaintiff's injuries were the direct, proximate and foreseeable result of Defendants' breach of warranties as outlined above, the unmerchantable condition of the subject Husking Unit, and the unfitness of the Husking Unit.

84. Plaintiff is therefore entitled to recover actual and punitive damages from Defendants.

## FOR A FIFTH CAUSE OF ACTION
## PUNITIVE DAMAGES

85. Plaintiff adopts and re-alleges each prior paragraph, where relevant, as if set forth fully herein.

86. The actions and/or inactions of Defendants were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct causing substantial harm and resulting in damages to Plaintiff.

87. Defendants acted with a conscious and flagrant disregard for the rights and safety of Plaintiff and/or deliberately engaged in willful, wanton, and reckless disregard for the safety of Plaintiff.

88. By reason of the foregoing, Defendants are liable for punitive and exemplary damages.

89. Wherefore, Plaintiff demands judgment against Defendants for punitive and exemplary damages, plus interest, costs and attorneys' fees for having to bring this action, and such other and further relief as this Honorable Court or jury may deem just and proper.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays as follows:

1. For a trial by jury and judgment against the Defendants for such sums as actual and other compensatory damages in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court.

2. For exemplary and punitive damages against Defendants in an amount as a jury may determine to halt and deter such conduct.

3. For the costs of this suit, including attorney's fees, expenses, and interest.

4. For such other and further relief to which she may be entitled and as this Honorable Court may deem just and proper.

**PIERCE, SLOAN,**
**KENNEDY & EARLY LLC**
321 East Bay Street
Post Office Box 22437
Charleston, SC 29401
(843) 722-7733

*s/Allan P. Sloan, III*
Allan P. Sloan, III (Fed ID 6268)
R. Richard Gergel (Fed ID 13170)
J. Morgan Forrester (Fed ID 12126)
*Attorney for the Plaintiff*

September 11, 2023
Charleston, South Carolina